IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN D. WILSON,

                    Plaintiff,                           CV 07-6242-ST

        v.                               OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                        Defendant.         

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Brian D. Wilson ("Wilson"), brings this action for judicial review of a final

decision of the Commissioner of the Social Security Administration denying his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under

Titles II and XVI of the Social Security Act ("SSA").

This court has jurisdiction under 42 USC §§ 405(g) and 1383(c). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Born in 1953, Wilson completed tenth grade and earned a GED in the Army. AR 337.[1] He was 53 years old at the time of the hearing before the Administrative Law Judge ("ALJ"). Until March 2004, Wilson worked as a janitor, construction laborer, fish killer, painter's assistant, grounds keeper, and in building maintenance. AR 338.

In August 2004, Wilson filed applications for both DIB and SSI, alleging he has been disabled continuously since January 1, 2004, based on depression, anxiety, panic attacks, and joint and muscle pain. AR 61-63, 72, 336. A claimant seeking DIB must show that the disability commenced during a period in which he had "insured status" under the program. 42 USC § 416(i)(3). Wilson's last insured date is December 31, 2005.[2] AR 14, 16.

Wilson's claims were denied initially on November 23, 2004, and on reconsideration on March 30, 2005. AR 28-37, 329-33. Wilson then requested a hearing before an ALJ. AR 26. After a hearing held on March 15, 2007 (AR 334-69), an ALJ issued a decision on April 27, 2007, unfavorable to Wilson. AR 14-24. Wilson appealed that decision to the Appeals Council

---

[1] Citations to "AR" refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 10).

[2] The record also gives a date last insured of March 2006. AR 70. However, Wilson does not challenge the date last insured identified by the ALJ.

which denied his request for review on July 9, 2007 (AR 6-10), making the ALJ's decision the
final decision of the Commissioner.  20 CFR §§ 404.981 & 416.1481.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in death
or which has lasted or can be expected to last for a continuous period of no less than 12
months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to
establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*,
517 US 1122 (1996) (citations omitted).  The ALJ engages in a five-step sequential inquiry to
determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520,
416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*,
180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial
gainful activity.  If so, the claimant is not disabled.  If not, then the Commissioner proceeds
to step two.  20 CFR §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has one or more severe
impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, then
the Commissioner proceeds to step three.  20 CFR §§ 404.1520(c), 416.920(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or
equals" one of the impairments listed in the SSA regulations, 20 CFR Pt. 404, Subpt. P, App. 1
("Listing of Impairments").  If so, the claimant is disabled.  If the impairment does not meet or

equal one of the listed impairments, then the Commissioner proceeds to step four.  20 CFR

§§ 404.1520(d), 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must determine the

claimant's residual functional capacity ("RFC").  The RFC is an assessment of the sustained

work-related activities the claimant can still do on a regular and continuing basis, despite the

limitations imposed by the impairments.  20 CFR §§ 404.1545(a), 416.920(e), 416.945; Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able to perform work

he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates

that he or she cannot perform work done in the past, the Commissioner proceeds to step five.

20 CFR §§ 404.1520(e), 416.920(e).

Finally, at step five, the Commissioner determines whether the claimant is able to do any

other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do

other work, the Commissioner must show a significant number of jobs exist in the national

economy that the claimant can do.  The Commissioner may satisfy this burden through the

testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines,

20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant

number of jobs exist in the national economy that the claimant can do, then the claimant is not

disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 CFR

§§ 404.1520(f), 404.1566, 416.920(f).

///

///

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## THE ALJ'S FINDINGS

At step one, the ALJ found that Wilson has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date. AR 16.

At step two, the ALJ determined that Wilson suffers from the severe impairments of cervical degenerative disc disease/strain, a history of ankle injury/fracture, chronic pain disorder, dysthymic disorder/bipolar disorder, anxiety disorder, adult attention deficit disorder, cannabis dependence, and a history of polysubstance abuse. AR 17. At step three, the ALJ concluded that Wilson's impairments do not meet or equal any listed impairment. *Id.*

The ALJ decided that Wilson can perform light work with only occasional bending over. AR 18. He has the RFC to lift 20 pounds occasionally and 10 pounds frequently, stand or walk for about six hours and sit for about six hours during an eight hour work day, as long as he has the opportunity to get off his feet occasionally. *Id.* The ALJ also determined that Wilson's mental impairments preclude tasks involving detailed or complex instructions, independently formulating his own work plans and goals, any more than occasional or superficial public interaction, and consistently engaging in ongoing cooperative teamwork endeavors. *Id.*

At step four, the ALJ found that Wilson cannot perform his past relevant work. AR 23. At step five, however, the ALJ concluded that Wilson could perform the jobs of bench assembler (DOT[3] 706.684-022, light exertion, SVP 2), garment sorter (DOT 222.687-014, light exertion,

---

[3] *Dictionary of Occupational Titles* ("*DOT*"), US Dep't of Labor (rev. 4th ed. 1991).

SVP 2), or a stuffer (DOT 731.685-014, sedentary exertion, SVP 2).  AR 24.  As a result, the

ALJ found Wilson not to be entitled to DIB or SSI.  *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it applied proper legal

standards and its findings are supported by substantial evidence in the record.  42 USC § 405(g);

*Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial evidence means more than a

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations

omitted).  If supported by substantial evidence, the Commissioner's decision must be upheld,

even though the evidence may be susceptible to more than one rational interpretation.  *Andrews*,

53 F3d at 1039-40; *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001) (citation omitted)

("the court may not substitute its judgment for that of the Commissioner").

## DISCUSSION

Wilson contends that the ALJ improperly rejected his testimony, as well as the opinions

of his treating doctor, treating therapist and treating nurse practitioner.  In order to be considered

capable of performing light work, a claimant must be able to frequently lift or carry objects

weighing up to 10 pounds and be able to do a "good deal of walking or standing, or . . . sitting

most of the time with some pushing and pulling of arm and leg controls."  20 CFR § 404.1567.

The crux of Wilson's challenge is that the ALJ improperly discounted evidence that he is unable

to perform these tasks.  If the ALJ had properly credited the evidence, Wilson contends that

based on his age he must be found disabled under the Medical-Vocational Rules, 20 CFR, Pt.

404, Subpt. P, App. 2, Rule 201.14.

**I.  Testimony of Wilson's Treating Physician and Other Medical Sources**

    **A.  Legal Standard**

       The ALJ is responsible for resolving conflicts and ambiguities in medical evidence.  *See*

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1195 (9th Cir 1999) (citation omitted). The

Ninth Circuit distinguishes among the opinions of three types of physicians:  (1) those who treat

the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (non-

examining physicians).  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  Generally, a treating

physician's opinion is afforded the greatest weight in disability cases because "the treating

physician is employed to cure and has a greater opportunity to know and observe the patient as

an individual."  *Ramirez v. Shalala*, 8 F3d 1449, 1453 (9th Cir 1993) (citations and internal

quotation marks omitted).  The opinion of an examining physician is, in turn, entitled to greater

weight than the opinion of a non-examining physician.  *Pitzer v. Sullivan*, 908 F2d 502, 506 n4

(9th Cir 1990).

       A treating physician's opinion on the nature and severity of the claimant's impairment is

given controlling weight when it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent" with other substantial evidence in the

record.  20 CFR § 404.1527(d)(2).  An uncontradicted treating or examining doctor's opinion

may only be discredited for "clear and convincing reasons."  *Thomas v. Barnhart*, 278 F3d 947,

957 (9th Cir 2002) (citation omitted).  If it is contradicted by the opinion of another doctor, the

ALJ may reject the treating or examining doctor's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F3d at 830 (citation omitted).

Similarly, the ALJ "not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability" if he gives clear and convincing reasons for rejecting those opinions. *Reddick v. Chater*, 157 F3d 715, 725 (9th Cir 1998), quoting *Montijo v. Sec'y of Health & Human Servs.,* 729 F2d 599, 601 (9th Cir 1984). "A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id* (citation omitted).

Testimony from a non-examining expert ordinarily does not warrant rejection of a treating physician's opinion. *Id* at 830-31; *Pitzer*, 908 F2d at 506 n4 ("The non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician"). In other words, the ALJ may reject the testimony of an examining physician in favor of a non-examining physician only by giving specific, legitimate reasons supported by substantial evidence in the record. *Roberts*, 66 F3d at 184.

Only "acceptable medical sources" can give medical opinions to establish the existence of a medically determinable impairment. 20 CFR §§ 404.1513(a) & 416.913(a), 404.1527(a)(2) & 416.927(a)(2). "Acceptable medical sources" include licensed physicians and licensed

psychologists, but not licensed clinical social workers and therapists.  20 CFR §§ 404.1513 & 416.913.

The weight to be given to opinions from non-acceptable medical sources "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors."  SSR 06-03p, 2006 WL 2329939, *4 (Aug. 9, 2006).  Those other factors include:

> • How long the source has known and how frequently the source has seen
> the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an
> opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the
> individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

*Id* *4-5.

### B.  Dr. Ames

Stephan Ames, M.D., a family practitioner, treated Wilson for about two years from August 20, 2004, through September 28, 2006.  AR 228-36.  On February 8, 2007, Dr. Ames completed a medical source statement opining that Wilson's medical conditions prevented him from engaging in full-time employment, observing that:

> [Wilson] is not able to sustain more than 20 minutes at a time
> upright or sitting at a computer.  He does not go to church or to the
> mall due to the pain.  He would not be able to attend an 8 hour per
> day job with normal break periods 5 days a week on a sustained
> basis.  In a 30 day period, it would not be likely that he could
> survive more than two days in a row due to his pain.  It is
> recommended that he not lift more than 15 pounds.  He would
> need to have the ability to choose every 20 minutes to sit, stand or
> laydown [*sic*]. . . .  His condition is permanent and is not likely to
> improve.

AR 325.

Both Dr. Ames' restrictions of lifting no more than 15 pounds and being upright or sitting at a computer for no more than 20 minutes at a time are inconsistent with the ability to perform light work.  However, the ALJ gave this opinion "little weight," noting that Dr. Ames had previously "refused [Wilson]'s request for a disabled parking permit because there was not enough evidence to conclude that it was necessary, . . . yet now, in the absence of additional medical evidence, he feels the claimant is completely disabled and unable to do any type of work."  AR 22.  The ALJ also found that Dr. Ames' opinion was supported only by "mild imaging findings" and "inconsistent with [Wilson]'s reported activities during the period in question."  *Id*.  Finally, the ALJ found that "Dr. Ames simply repeats [Wilson]'s assertions without a basis in the medical record.  *Id*.

Dr. Ames put Wilson's request for a disabled parking permit "on hold" in November 2004.  AR 234.  That was over a year before Wilson's insured status expired and about two and a half years before Dr. Ames issued his opinion.  Given the time lapse, any inconsistency is, at best, insubstantial.  Moreover, the record neither reveals why the parking permit request was put "on hold" nor whether such a permit was issued later.  Furthermore, a disabled parking permit is premised on difficulty in walking short distances, not an inability to work.  Thus, this reason by the ALJ provides no basis on which to discredit the opinion of Dr. Ames regarding Wilson's exertional restrictions.  However, after an exhaustive review of the record, this court concludes that the ALJ's other reasons for rejecting Dr. Ames' opinion, the opinions of the other medical sources, and Wilson's testimony are well supported.

The medical record contains only mild findings.  An image of Wilson's lumbosacral spine, taken after Wilson's appointment with Dr. Ames on November 11, 2004, revealed only

"mild diffuse degenerative spurring" and "no degenerative disc narrowing." AR 242. Other than this image taken in response to Wilson's complaints of ongoing back pain, the record contains only images of Wilson's ankle (AR 240-41) taken through his date last insured. Additionally, between the November 11, 2004 appointment with Dr. Ames and the expiration of Wilson's insured status about a year later, Wilson saw Dr. Ames only four times. AR 232-33. Of those appointments, only one related to his back pain and was a "medication check" for pain medications. As of December 15, 2004, Wilson's chronic low back pain was "well controlled" with Vicodin. AR 233.

Wilson's activities of daily living conflict with Dr. Ames' findings. His mother, with whom he lived, was getting more "forgetful," and Wilson was assuming the role of taking care of her, doing shopping, house cleaning, and was "feeling he is able to do that." *Id*. This information in the medical record is close in time to Wilson's date last insured and provides a legitimate basis for the ALJ to reject the much later opinion of Dr. Ames concerning alleged exertional restrictions.

Finally, the record supports the ALJ's finding that Dr. Ames merely repeated Wilson's assertions without a basis in the medical record. Dr. Ames' contemporaneous chart notes are inconsistent with the limitations identified in his later letter. In November 2004, although reporting back pain, Wilson had "2+ DTR's" and "5/5 strength" (AR 234), which at least one reviewing doctor found inconsistent with Wilson's reports of his limitations. AR 170. A month later, Wilson was "able to move much better" and felt "that controlling his pain has helped quite a bit." AR 233. Following that December 2004 appointment, Wilson's treatment with Dr. Ames focused on issues other than his chronic back pain (AR 231-32) until March 9, 2006 (AR 230).

Moreover, not once in those 16 months during the critical time immediately before and after Wilson's date last insured do Dr. Ames' chart notes mention the exertional restrictions later identified in his letter opinion.  In short, next to no evidence in the medical record supports the limitations that Wilson claims preclude him from performing light work.

Thus, this court concludes that the ALJ properly discredited the opinion offered by Dr. Ames.

### C.  <u>Other Non-Acceptable Medical Sources</u>

Wilson also contends that the ALJ erred in rejecting the opinions of his treating therapist, Sandy O'Brien (AR 203, 323-24), and his treating psychiatric nurse practitioner, Nancy Bidlack (AR 327-28).  Because O'Brien and Bidlack are not acceptable medical sources, the ALJ was free to reject their opinions by giving germane reasons for doing so.

O'Brien wrote a letter dated January 31, 2007, to Wilson's attorney stating that since September 2004 when she first began treating Wilson, "[t]here has not been a time since we began that I though that he could physically handle a 40-hour a week job due to his intense physical plain."  AR 323.   The ALJ found that O'Brien did not state that Wilson was disabled, relied heavily on Wilson's self-reported limitations, and focused on Wilson's alleged *physical* (as opposed to mental) inability to handle a 40 hour a week job.  AR 323.  Accordingly, he gave O'Brien's opinion "some but not great weight."  AR 21.

Bidlack saw Wilson briefly every month since August 2006 (about eight months after his date last insured) to manage his mental health medications.  On March 6, 2007, she wrote a letter to Wilson's attorney stating that although she did not focus on pain treatment, Wilson "has serious mental health disabilities, as well as chronic pain, both of which inhibit his ability to maintain employment" and "continues to remain far too vulnerable — both emotionally and

12 - OPINION AND ORDER

physically — to withstand the stress he would face in a job setting." AR 327-28. Noting Bidlack's reliance on Wilson's *physical* limitations which "is beyond her expertise as a psychiatric treating provider" and the short treatment period prior to her opinion, he gave this opinion "little weight." AR 21-22.

The treatment records reflecting Wilson's sessions with O'Brien and Bidlack do mention their occasional observations of Wilson's physical pain. AR 244, 262-320. However, an exhaustive review of those records reveals that O'Brien and Bidlack were treating Wilson's alleged attention deficit hyperactivity disorder (ADHD) and other mental impairments, not inquiring into, assessing, or attempting to treat his physical limitations. It is a germane reason to reject the testimony of a therapist and psychiatric nurse practitioner on the ground that their opinions address physical – as opposed to mental – limitations in reliance on Wilson's subjective reporting. Accordingly, this court concludes that the ALJ did not err by giving only some weight to the opinions of O'Brien and Bidlack.

## II. **Wilson's Testimony**

### A. **Legal Standard**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments and "show that the impairment or combination of impairments *could reasonably be expected* to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996) (citations omitted) (emphasis in original). The claimant is only required to produce objective medical evidence of the impairment, not of the symptom or its severity or its causal relationship to the impairment. *Id* at 1282. The claimant is also not required to show that the impairment could reasonably be

expected to cause the severity of the symptom, but "need only show that it could reasonably have caused some degree of the symptom." *Id.*

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptom. To determine whether subjective testimony is credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id* at 1284 (citations omitted).

The following factors must also be considered: the circumstances under which the claimant testified, any contradictions or corroborations, the claimant's prior work record, the nature of any symptoms and medical treatment, her daily activities, and any other factors concerning the claimant's functional limitations and restrictions. 20 CFR § 404.1529 and SSR 96-7p, 1996 WL 374186, *3 (July 2, 1996).

If the ALJ finds the claimant's symptom testimony is not credible, the ALJ '"must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit" it. *Bunnell v. Smolen*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*) (internal quotations and citations omitted). Absent evidence of malingering, the ALJ may reject symptom evidence only by giving clear and convincing reasons, including which testimony is not credible and what facts in the record lead to that conclusion. *Reddick v. Chater*, 157 F3d 715, 722 (9th Cir 1998) (citation omitted); *Smolen*, 80 F3d at 1281,

1284.  With evidence of malingering, the ALJ must provide "specific, cogent reasons" for his

disbelief.  *Reddick*, 157 F3d at 722 (citation omitted).

**B.    Wilson's Testimony**

Wilson testified that he suffered an on-the-job injury to his neck in 1976, then was in a

car wreck in June 1997 that "[jammed] every joint, every muscle, every nerve that carries

messages . . . to a mush" and "did him in . . . from the shoulders down."  AR 339, 341, 350.

Wilson was in another car wreck on February 5, 2004, and transported to the hospital by

ambulance, complaining of neck and back pain.  AR 151-53.  He was stopped in his vehicle

when another vehicle hit his from behind "at a relatively high rate of speed."  *Id*.  However, there

was no rollover and Wilson did not strike his head, was not knocked unconscious, and was not

thrown from the vehicle; the examining doctor at the hospital found "no sign of bruising or seat

belt marking" on his abdomen.  *Id*.  Nevertheless, Wilson testified that the second wreck

"jammed every joint" between his feet and his shoulders and makes it impossible for him to be

on his feet for more than 15 or 20 minutes without his knees going out as he is walking.  AR 340.

He asserts that he cannot be on his feet for more than 15 or 20 minutes in an eight-hour period.

AR 348.  At the time of the second accident, Wilson had been working 20 hours per week at a

department store as a janitor for nearly two years.  AR 337-39.  Although he worked for a few

weeks after the second accident, he experienced migraine headaches every time he bent over to

clean and consequently quit his job.  AR 341-42, 359.

///

**C.    Analysis**

Wilson satisfied the first stage of the analysis by presenting objective medical evidence

of medically determinable impairments which could reasonably be expected to produce some

degree of the symptoms he described.  At the second stage of the analysis, the ALJ found that

Wilson's statements "concerning the intensity, persistence, and limiting effects of [his]

symptoms are not entirely credible."  AR 19.

The ALJ found some suggestion in the record that Wilson "is embellishing his physical

and mental difficulties for secondary gain."  AR 21.  He based this conclusion on treatment

records shortly after the second car accident in which the treating medical provider found that

Wilson was malingering and exaggerating his symptoms to obtain additional drugs and a

handicapped sticker for his car.  AR 138-39, 146-49.  This evidence arguably provides a basis to

require only specific, cogent reasons for rejecting Wilson's testimony, as opposed to the clear

and convincing reasons that are required in the absence of any evidence of malingering.

However, the ALJ met whatever burden applies because his other reasons for rejecting Wilson's

testimony are clear and convincing.

Wilson's testimony centered on one main physical issue, namely his alleged inability to

be on his feet for more than 15-20 minutes at a time or in an eight hour work day.  This is the

crux of his assertion that he is unable to sustain light work.  The ALJ rejected that level of

physical limitation based on evidence that Wilson:  (1) continued working until March 2004 after

the second car accident which allegedly incapacitated him (AR 20); (2) gave testimony regarding

his work performance that was inconsistent with the information supplied by his former

employer (*id*); (3) performed physical activities inconsistent with disability (*id*); (4) received

unemployment compensation which required him to attest to being physically and mentally able

to work and actively seeking work during the time he alleges disability (*id*); and (5) reported

physical symptoms ("total body pain") and repeatedly sought narcotic pain medications while

treating medical providers diagnosed only a back strain and could find "nothing objectively wrong with him" (AR 21).

After the second car accident in February 2004, the ALJ noted that Wilson continued to work as a janitor until early March 2004, about two months after his alleged onset date of January 1, 2004. This work involved lifting 50 pounds maximum and 25 pounds frequently. AR 73. However, Wilson responds that he was only working 20 hours a week which was not substantial gainful activity and which he could not sustain, proving that he was not capable of full-time work. Wilson's inability to perform his past job is not in question since the ALJ found that he was unable to perform his past relevant work. However, the fact that Wilson could work at all after his alleged impairments arose is persuasive evidence that he was capable of some work activity and inconsistent with his claim of an inability to perform even less strenuous work. An assessment of a claimant's credibility properly includes consideration of the claimant's prior work records and efforts to work. SSR 96-7p, 1996 WL 374186, *5; *see also Smolen*, 80 F3d at 1284. Moreover, in his October 2004 Function Report, Wilson stated that he had been "hurting like this for 7 constant years - ever since the car crash" in 1997 and "and thinking back on the pain the last 2 years working . . . just can't do it anymore." Tr. 109. This implies that Wilson worked with his impairment even longer than noted by the ALJ.

Regarding his work performance, Wilson testified that his employer was going to fire him because he had to rest for five minutes after working for 15 minutes, but then testified that he made mistakes on the job and the boss let him go. Tr. 342, 345-46. To the contrary, the employer answered a questionnaire indicating that the attendance records showed no tardies, attendance problems or negative feedback on performance. AR 120-21. Wilson contends that the questionnaire is not reliable since it was completed by someone who did not supervise or

17 - OPINION AND ORDER

work with him.  However, the person completing the questionnaire relied on the employer's records and Wilson does not assert that the information provided by this person was incorrect.

As to other physical work activities, the ALJ noted that Wilson was independent with respect to personal care and could prepare meals for himself and drive a car.  AR 20, 101, 103-04, 111-13, 159.  In addition, Wilson lived with his elderly mother and gave her a great deal of assistance by doing the shopping, laundry, dishes, housecleaning, yardwork and other household chores, as well as painting the house.  AR 20, 104-05, 112-13, 159, 196, 219, 228, 284, 302.  Although Wilson claimed on October 1, 2004, that he never took walks and could walk only 100 feet before needing to rest (AR 107), the ALJ noted his contrary report to O'Brien that he had walked for an hour in May 2005 three months after his ankle fracture.  AR 20, 303.  He also found that Wilson managed his own finances, could use a computer, read the bible and teach bible classes (AR 105-06, 113, 159, 295), "all of which suggest that he retains a significant degree of cognitive functioning."  AR 20.

As Wilson points out, he reported being "somewhat sore" after his walk in May 2005 (AR 303), reported pain after working in the yard (AR 302), painted the house in 15 minute increments (AR 298), did chores for only about an hour a day (AR 299), and claims a mental limitation primarily in the area of social functioning and memory, not cognitive functioning.  Nevertheless, the ALJ may consider a claimant's daily activities as a factor in making credibility determinations.  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).  The ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping" is an appropriate reason to discount testimony.  *Thomas v. Barnhart*, 278 F3d 947, 959 (9th Cir 2002).  Even if the ALJ overstated some of Wilson's activities, some inconsistencies nonetheless exist between Wilson's claims and the extent of his daily activities.  The ALJ may appropriately rely

18 - OPINION AND ORDER

on those inconsistencies to find Wilson's testimony not credible.  *Burch v. Barnhart*, 400 F3d

676, 680 (9th Cir 2005); SSR 96-7p, 1996 WL 374186, *5.

The ALJ also relied on the fact that Wilson received unemployment compensation for

about a year after he alleged that he became disabled and unable to work.  AR 20, 120.  The ALJ

noted that in order to receive such payments, Wilson "had to have attested that he was physically

and mentally able to work, as well as that he was actively seeking work."  AR 20.  Wilson

contends that he is entitled to receive unemployment benefits under Oregon law even if he is

able to work only part-time.  OAR 471-030-0036(2)(b).  However, even an ability to perform

part-time work exceeded Wilson's assertion that, at best, he could only do sedentary work.

Finally, the ALJ found that Wilson had a "history of exaggerating his impairments for

secondary gain or to obtain prescription medications."  AR 21.  This finding is based on

Wilson's complaints of total body pain after the 2004 accident and repeated requests for narcotic

pain medications despite a diagnosis of only a back strain and having "nothing objectively wrong

with him."  AR 137-38, 144-45, 152.  The ALJ may properly conclude that a claimant is not

credible based on drug seeking behavior.  *Edlund v. Massanari*, 253 F3d 1151, 1157 (9th Cir

2001).  The ALJ also noted Wilson's  report to a consultative psychologist that he "suffered a

concussion and does not recall much of the month of February" (AR 158), but found "absolutely

no support for this in the record."  Such a conflict between a claimant's subjective complaints

and the objective medical evidence is a legitimate reason to cast doubt on his credibility.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 600 (9th Cir 1999).

Finally, the ALJ relied on a note by a treating provider on February 13, 2004, that Wilson

"malinger[s], wants a handicap sticker, refused  . . . moves well . . . has a hx of reporting anxiety

and exaggerating his sx to get more drugs.  He may have pain but clearly has an agenda."

19 - OPINION AND ORDER

AR 138.  Wilson objects to this evidence as unreliable hearsay.  Even if it is, which is not clear,

the ALJ may receive evidence at a hearing that would not be admissible in court under the

Federal Rules of Evidence.  *Bayliss v. Barnhart*, 427 F3d 1211, 1218 (9th Cir 2004).  The ALJ

also points to Dr. Ames' similar note in November 2004 when putting Wilson's request for a

handicap sticker "on hold" that Wilson "really can't describe how far he can walk . . . He has a

good range of motion.  No significant palpable spasm noted but complains of pain in the back."

AR 195.  Based on these medical records, the ALJ could reasonably draw the inference that

Wilson "is embellishing his physical and mental difficulties for secondary gain."  AR 21.

Thus, the ALJ provided clear and convincing reasons for rejected Wilson's subjective

complaints as not entirely credible.

## III.   Conclusion

Wilson asserts that the ALJ improperly discredited his testimony and the testimony of several

of his treating medical sources.  This court finds no merit to that assertion and rejects Wilson's

contention based upon that rejected testimony that he is limited, at best, to sedentary work and,

therefore, is disabled under the Medical-Vocational rules.  This court finds no other basis on which

to overturn the decision of the ALJ.

## ORDER

For these reasons, the Commissioner's decision is AFFIRMED.

DATED this 30th day of September, 2008.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge